[No. D043278. Fourth Dist., Div. One. Oct. 7, 2004.]

WILLIAM P. JOHNSON et al., Plaintiffs and Appellants, v.
STATE WATER RESOURCES CONTROL BOARD, Defendant and
Respondent.

## COUNSEL

Craig Michael Collins for Plaintiffs and Appellants.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Deborah M. Fletcher, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**McINTYRE, J.**—William P. Johnson and Vail Lake USA, LLC (Vail Lake and, together with Johnson, the appellants), appeal an order of dismissal entered after the superior court sustained without leave to amend a demurrer by the State Water Resources Control Board (the State Board) to their first amended petition for writ of mandate and complaint for damages. The premise of their appeal is that *People ex rel. Cal. Regional Wat. Quality Control Bd. v. Barry* (1987) 194 Cal.App.3d 158 [239 Cal.Rptr. 349] (*Barry*),

on which the trial court relied, was wrongly decided or is inapplicable here. We find their argument unavailing and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Because the challenged ruling arises in the context of a demurrer, we accept as true the material factual allegations of the first amended petition for writ of mandate and complaint for damages (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 806 [135 Cal.Rptr.2d 1, 69 P.3d 927]).

Johnson is the manager and owner of Vail Lake, which owns a 9,000-acre Riverside County ranch property that is zoned for agricultural and recreational uses (the property). In July 1999, Vail Lake graded 132 acres of the property, primarily on portions previously graded for dirt access roads or to create five flat graded areas of 1/4 to 1/2 acre each to be used as turnarounds for vehicles and equipment in places where the roads ran on the crest lines of steep hills.

In December 1999, Vail Lake submitted an application for an "Agricultural Grading/Clearing Exemption" from the Riverside County (the County) grading ordinance; the application stated that the grading was done for the purpose of initial clearance and farming of grapes, olives, barley and oats. The County Agricultural Commissioner made a favorable recommendation on the application. At the hearing on the application, Vail Lake presented evidence that approximately 140 acres of the property was already under cultivation at the time it graded the property and that Johnson had cleared, planted and cultivated many acres of avocados and other crops over the course of his career. However, in February 2000, after receiving objections from the United States Fish and Wildlife Service, the County denied the application and required Vail Lake to obtain a grading permit.

Shortly thereafter, the California Regional Water Quality Control Board for the San Diego Region (the Regional Board) inspected the property and concluded that, although Vail Lake had implemented some of its best management practices, the protections were not adequate and that Vail Lake was required to file a notice of intent and a storm water pollution prevention plan, to implement additional erosion prevention and sediment controls and to obtain a grading permit. The Regional Board claimed it issued a notice of noncompliance and request for information to Johnson in May 2000 and issued a second such notice in June 2000, adding allegations that Vail Lake had improperly failed to file a report of waste discharge. However, the appellants never received the notices and the Regional Board has no record that the notices were sent. Further, the Regional Board did not issue any similar notices thereafter (which contrasts with its "virtually continuous

enforcement activity" with respect to two other Johnson projects [North Park Plaza and Rancho California Highlands] found to be noncompliant).

In February 2001, as a result of the Regional Board's threats of civil and criminal prosecution, Vail Lake filed a notice of intent to grade 11 acres of the property for "Vail Lake Estate Lots," a residential project. In June 2001, the Regional Board served Johnson with a complaint for administrative civil liability for violations relating to the property. The complaint sought $406,700 for the failure to file a timely notice of intent and the failure to submit a technical report and cited different statutory provisions than the notices of noncompliance, which statutes allowed higher penalties, but did not allege any unlawful discharge, erosion, runoff or sediment resulting from the grading. Although the complaint alleged that Vail Lake failed to comply with the 1999 general permit for the property, such reliance was erroneous because the permit was not adopted until a month after the grading was completed.

The appellants requested that the Regional Board rescind the penalty on the grounds that a notice of intent had never before been required in the State of California for cutting an access road on a 9,000-acre ranch subject to agricultural and recreational zoning and that access roads within agricultural zones are not subject to permitting requirements. The appellants and the Regional Board engaged in settlement discussions up until two days before the administrative hearing, but these efforts were unsuccessful. As the appellants had excused their counsel during the settlement negotiations, they requested a continuance of the administrative hearing to re-engage counsel, but the Regional Board denied the request.

At the administrative hearing, the Regional Board imposed a $422,200 fine on the appellants for their failures to file a notice of intent prior to grading the property and to respond to the board's request for information. The technical analysis in support of the fine did not cite any support for the Regional Board's finding that the 600-day delay in filing the notice of intent displayed a "high level of culpability," was not based on any financial or "ability to pay" information from Johnson or Vail Lake and included a claim for substantial, but undocumented, staff time. The Regional Board's request for information was also defective in that it did not meet the statutory standards for enforceability.

The appellants sought review by the State Board, but the board dismissed their petition based on its informal rule that it will not review administrative civil penalties imposed by regional boards. The appellants then filed this action for a writ of mandate and damages against the State Board and the Regional Board, alleging in relevant part that the State Board abused its

discretion in dismissing their request; that the State Board's informal rule constitutes an abdication of its administrative oversight responsibilities and results in unequal penalties across the state, thus violating due process and equal protection principles; and that the informal rule violates Government Code section 11425.50, which precludes the imposition of a penalty based on a rule that has not been formally adopted.

The State Board demurred to the claims against it on various grounds. The trial court sustained the demurrer without leave to amend and, in its order, dismissed the State Board from the proceedings based on the analysis of *Barry, supra*, 194 Cal.App.3d 158. This appeal ensued. The Regional Board is not a party to this appeal and various claims against it are still pending in the superior court.

## DISCUSSION

■ The Porter-Cologne Water Quality Control Act (Wat. Code, § 13000 et seq. (the Act) (all statutory references are to the Water Code unless otherwise specified) establishes a statewide program of water quality control that is maintained through regional administration within the framework of statewide coordination and policy. For the purposes of the Act, the state is divided into nine regions, each of which is governed by a regional board. (§§ 13200, 13201.) Each regional board is charged with formulating and adopting water quality control plans for the areas within its region and, through those plans, establishing water quality objectives that will "ensure the reasonable protection of beneficial uses [of waters of the state] and the prevention of nuisance . . . ." (§§ 13240, 13241.)

■ Pursuant to the Act, a regional board may issue orders to enforce its water quality control plans and, as relevant here, may impose administrative penalties of not less than $500 per day for violations involving a discharge or penalties of not less than $100 per day for violations that do not involve a discharge, unless the board makes certain findings. (§ 13350, subds. (a), (d)(1), (f)(1).) Unless an aggrieved party timely seeks judicial review of an order imposing civil penalties, the State Board may convert the order into a judgment. (§ 13328.) Collected penalties are deposited into the Waste Discharge Permit Fund, to be expended by the State Board to assist regional boards or other public agencies in cleaning up or abating the effects of water pollution. (§ 13350, subd. (k).)

■ A party who is aggrieved by an order or decision of a regional board may seek administrative review of that order or decision by petition to the State Board. (§ 13320, subd. (a).) The State Board, which consists of five members appointed by the Governor (§ 175), has discretion to review such

orders or decisions (§ 13320, subd. (a); Cal. Code Regs., tit. 23, § 2052, subd. (a)(1); *Barry, supra,* 194 Cal.App.3d at pp. 171, 175–177), but in accordance with its own regulations, it may "[r]efuse to review the action or failure to act of the regional board if the petition fails to raise substantial issues that are appropriate for review . . . ." (Cal. Code of Regs., tit. 23, § 2052, subd. (a)(1).) The question here is whether the State Board's refusal to consider a petition challenging a regional board's action or inaction is subject to judicial review.

In *Barry,* the defendants challenged a court order granting a regional board access to their property to abate a source of water pollution emanating from a nonoperating mine located there. The defendants argued in part that the order, which arose out of regional board resolutions directing cleanup of their property, was premature because the court issued it before the State Board considered the merits of their appeal from the resolutions. Specifically, the defendants contended that the Act and regulations thereunder gave an aggrieved party the *right* to appeal a regional board decision to the State Board, that the State Board was required to consider such an appeal and that the State Board's refusal to hear the matter on the merits precluded finality of the regional board's resolutions. (*Barry, supra,* 194 Cal.App.3d at pp. 161, 168, 171.)

The *Barry* court rejected the defendants' argument. Construing the statutory language and the legislative history, it concluded that the State Board had discretion to review (or decline to review) regional board orders and, in the analysis that is the crux of the dispute here, held that the State Board's exercise of discretion in determining what issues are "substantial" and "appropriate for review" was itself not subject to judicial review. (*Barry, supra,* 194 Cal.App.3d at pp. 176–177.)

The appellants contend that the latter holding of *Barry* is erroneous and contravenes the requirement in section 13330 that "the court shall exercise its independent judgment on the evidence in any case involving the judicial review of a decision or order of the [S]tate [B]oard . . . ." However, the appellants' argument is based on a parsing of section 13330, which provides in relevant part:

"(a) Not later than 30 days from the date of service of a copy of a decision or order issued by the [S]tate [B]oard under this division . . . , any aggrieved party may file with the superior court a petition for writ of mandate for review thereof.

"(b) Any party aggrieved by a final decision or order of a regional board for which the [S]tate [B]oard denies review may obtain review of the

decision or order of the regional board in the superior court by filing in the court a petition for writ of mandate no later than 30 days from the date on which the [S]tate [B]oard denies review.

"[¶] . . . [¶]

"(d) Except as otherwise provided herein, Section 1094.5 of the Code of Civil Procedure shall govern proceedings for which petitions are filed pursuant to this section. For the purposes of subdivision (c) of Section 1094.5 of the Code of Civil Procedure, the court shall exercise its independent judgment on the evidence in any case involving the judicial review of a decision or order of the [S]tate [B]oard issued under Section 13320, or a decision or order of a regional board for which the [S]tate [B]oard denies review under Section 13320, other than a decision or order issued under Section 13323 [relating to the imposition of administrative civil liability]."

■ The challenged order is one imposing administrative civil liability, a "decision or order issued under Section 13323," and thus the language on which the appellants rely is inapplicable. Further, even if the cited language otherwise applied, the statute makes clear that where the State Board denies review, the court exercises independent judgment in reviewing the decision or order of *the regional board*, not that of the State Board. Thus, the statutory language supports, rather than contradicts, *Barry*'s conclusion that the State Board's denial of review is unreviewable by the courts.

The appellants argue, however, that the State Board's refusal to undertake review of regional board orders that impose administrative penalties violates their due process and/or equal protection rights. However, they have not, either in the proceedings below or on appeal, cited any authority in support of this contention. Further, they do not explain why the statutory scheme, which provides for direct judicial review of a regional board decision where the State Board declines review (a mechanism the appellants are also utilizing here), fails to adequately provide a venue for raising any and all challenges, constitutional or otherwise, to the propriety of the regional board's decision.

■ In sum, we agree with *Barry*'s conclusion that a discretionary decision by the State Board as to whether to review a regional board's decision imposing administrative penalties is not subject to judicial review. Further, the appellants have not established that the statutory scheme is constitutionally infirm. Because all of the appellants' claims against the State Board are based on the board's failure to grant review of the Regional Board's decision, there is no reasonable possibility that the defect in these claims can be cured by amendment. Thus, the trial court correctly sustained the State Board's demurrer without leave to amend and dismissed the State Board from these proceedings.

## DISPOSITION

The order of dismissal is affirmed. The State Board is entitled to its costs on appeal.

McConnell, P. J., and Nares, J., concurred.