Filed 6/28/22 Burlesque Enterprise v. City of Los Angeles CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| BURLESQUE ENTERPRISE, INC., | B313486 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCP01311) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge. Affirmed.

Law Offices of Joshua Kaplan and Joshua Kaplan for Plaintiff and Appellant.

Michael N. Feuer, City Attorney, Scott Marcus, Chief Assistant City Attorney, Blithe S. Bock, Managing Assistant City Attorney, and Michael M. Walsh, Deputy City Attorney, for Defendants and Respondents.

———————————

Burlesque Enterprise, Inc. (Burlesque) appeals from the trial court's judgment following an order denying Burlesque's petition for a writ of administrative mandate made pursuant to Code of Civil Procedure[1] section 1094.5.

Burlesque argues the trial court erred in denying its petition. It contends the decision of the Board of Police Commissioners of the City of Los Angeles (the Board) and the City of Los Angeles (collectively, the City) to revoke and confiscate, without any hearing, the Police Commission Permit (permit) necessary for Burlesque's adult entertainment business violated its due process rights. Burlesque also argues that the City is estopped from revoking its permit because the City had granted and renewed its permit since 2008. Finally, Burlesque argues that if section 1094.5 was not the correct vehicle to seek judicial review of the City's actions, we should construe its petition as one for a traditional writ of mandate under section 1085.

Each of Burlesque's arguments fails. There is no evidence that the City made a final decision or revoked or confiscated Burlesque's permit. Rather, the record contains a letter from the City to Burlesque stating the City believed Burlesque was operating without a valid permit and urging Burlesque to contact the Board so that it could bring its business into compliance. Two days later, the permit was provided to the Los Angeles Police Department (LAPD). However, there is no evidence as to how this occurred or that Burlesque took any administrative action to address the status of its permit before seeking a writ in court.

---

[1] All subsequent unspecified statutory references are to the Code of Civil Procedure.

Burlesque's argument that relief may be granted pursuant to a traditional writ of mandate also suffers from a lack of argument or evidence.  Accordingly, Burlesque is deemed to have waived that argument.

Additionally, Burlesque presented insufficient evidence and argument supporting the elements of equitable estoppel.  For example, Burlesque entirely failed to address that before a government entity may be estopped from enforcing the law, the party asserting estoppel must demonstrate sufficient injustice to justify the harm to the public.  (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 496-497.)

Burlesque has not demonstrated it is entitled to relief, and thus, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Burlesque Obtains and Renews a Permit for Adult Entertainment at the Location

On February 20, 2008, the City granted a permit to Burlesque to operate a topless cabaret.  According to the City, Burlesque's permit application package incorrectly stated that its location was within an appropriate zone for adult entertainment.  Each year thereafter, through 2020, Burlesque obtained a renewal of the permit.  The renewal process did not involve an investigation; it required only that Burlesque pay a fee and indicate any arrests at the location or any change in ownership.

### B. The City Denies a Permit for Adult Entertainment at the Location to Buyer 603 Investments, LLC

In October 2019, 603 Investments, LLC (603), owned by Stepan Kazaryan, sought to purchase Burlesque.  Because Los Angeles Municipal Code (LAMC) section 103.08 does not allow

permits to be sold or transferred, 603 applied to the City for a permit. Part of the application process included submitting a Zoning and Use Clearance for Police Permit form (Zoning Clearance form). The Zoning Clearance form was used to indicate whether the business activity was permitted at the location and had to be signed by the Department of Building and Safety (DBS).

The Commission Investigation Division (CID) reviewed 603's application. 603's Zoning Clearance form was ambiguous as to whether the location was zoned to allow adult entertainment, prompting CID to seek clarification from DBS. CID consulted with a building civil engineer with DBS, Chiharu Suzuki, who advised that DBS had not approved the use of the building for adult entertainment and that DBS did not have any record that the location had ever been authorized for that use. CID concluded that Burlesque's location was not properly zoned for adult entertainment because it was within 500 feet of a residential zone.[2] (See LAMC §§ 12.70, 103.31(a)(5).) Thus, CID recommended that the Board deny 603's permit application.

On January 3 and 11, 2020, the Board sent written notice to 603 of a hearing before the Police Permit Review Panel (Panel), scheduled for January 15, 2020, and of its intention to deny its

---

[2] According to CID, the owner prior to Burlesque was granted a permit for "Café Entertainment/Show" on July 3, 1984, and that adult entertainment was allowed at the location prior to 1988. In 1986, however, the City enacted LAMC section 12.70C, which required all adult businesses to cease operations within 500 feet of residential areas by March 6, 1988. (See LAMC § 12.70C.)

4

permit application. Both notices cited the zoning issue as a basis for the tentative denial.

On January 15, 2020, the Panel conducted a hearing to consider 603's application. Kazaryan; 603's attorney; Burlesque's owner, Joseph Gasparyan; the City Attorney; Suzuki; and a detective from CID presented information to the Panel. Suzuki testified that adult entertainment was not allowed within 500 feet of a residential zone unless the business obtained a variance. However, Burlesque had not obtained any variances, and DBS had not identified any allowance for a non-conforming use[3] of the parcel. Further, Suzuki stated that none of the certificates of occupancy for the location indicated that adult entertainment was permitted. Therefore, he concluded, it never lawfully existed as an establishment permitting adult entertainment, and the nonconforming use could not be maintained on the parcel.

The Panel asked 603 why it had not sought a variance. 603's attorney responded, "We don't agree with [Suzuki's statement] . . . that we could get a variance because the code is very difficult to comply with in terms of topography. You're dealing with a question of other uses in the neighborhood and whether or not this use is the same as another use."

603 argued that the nonconforming use of adult entertainment was "grandfathered in" because there was nothing prohibiting adult entertainment at the location before LAMC

---

[3] "A nonconforming use is a lawful use existing on the effective date of the zoning restriction and continuing since that time in nonconformance to the ordinance." (*City of Los Angeles v. Gage* (1954) 127 Cal.App.2d 442, 453.)

5

section 12.70 was adopted. Additionally, Burlesque had operated with a permit at the location for many years.

603 also argued that the planning commission and zoning administrator had jurisdiction over the matter. The Panel urged 603 to go to the planning commission to obtain clarification, including as to the possible grandfathered, nonconforming use, and advise the Panel at a later date. The Panel also proposed that 603 consider presenting its case before a hearing examiner. 603 objected to any continuance because it would delay the sale and transfer of Burlesque.

Accordingly, the Panel proceeded. It denied 603's permit on the basis that adult entertainment was not permitted at that location because a residential zone was within 500 feet of the business.

## C. Burlesque's Permit Is Transferred

During the January 15, 2020 hearing, the Panel inquired whether any action would be taken with respect to Burlesque's current permit. The City Attorney observed they would investigate why the permit was issued "in the first place and deal with it appropriately."

By a letter dated February 4, 2020, CID advised Burlesque, "It has come to the attention of [CID] that your business, Burlesque . . . may be operating without a Café Entertainment/Show – Adult Police Commission Permit. Please be advised that conducting business without the proper permits is a violation of the Los Angeles Municipal Code, and could result in ramifications which may prompt citations, denial, revocation, or suspension of a permit; and possibly a misdemeanor filing. [¶] To avoid further action, it is imperative that you call [CID] immediately. Our investigators will guide you through the

process and will provide you with the necessary information that will bring your business into compliance. . . ."

Burlesque contends that on February 6, 2020, the permit was revoked and confiscated. The City argues Burlesque voluntarily surrendered the permit to LAPD. The record includes a receipt acknowledging the transfer of the permit to LAPD, but that document does not indicate how the police came into possession of the permit.

**D.    Proceedings in the Trial Court**

On April 9, 2020, Burlesque and 603 filed a petition for writ of administrative mandamus, challenging the City's denial of 603's application for a permit and the City's "decision of February 6, 2020, revoking and confiscating" Burlesque's permit "without affording . . . [Burlesque] any [d]ue [p]rocess[-]mandated hearing."

On March 10, 2021, the trial court found Burlesque failed to state a claim because administrative mandamus under section 1094.5 applies to final administrative decisions following a hearing. However, there was no evidence that as to Burlesque, CID reached any decision or conducted a hearing.[4] The trial court entered judgment on April 13, 2021.

Burlesque and 603 timely filed this appeal. We granted 603's request for voluntary dismissal of its appeal, and we proceed only as to the issues raised by Burlesque.

---

[4] The trial court found that Burlesque did not have standing to challenge the City's January 15, 2020 denial of the permit to 603 because that decision did not involve or affect any of Burlesque's rights or interest. Burlesque does not challenge this finding on appeal.

7

## DISCUSSION

### A. The Trial Court Properly Denied Burlesque's Petition for Writ of Administrative Mandate

Under section 1094.5, a trial court may review "the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." (§ 1094.5, subd. (a).) Where there is no final administrative order or decision, however, judicial review is improper. (*Board of Med. Quality Assurance v. Superior Court* (1977) 73 Cal.App.3d 860, 862.)

We review factual findings for substantial evidence (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824) and questions of law de novo (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2015) 238 Cal.App.4th 710, 716).[5]

The City argues that because the Board did not make a decision or issue an order, there is no basis for section 1094.5 writ relief. Burlesque contends that on February 6, 2020, the City revoked and confiscated its permit, and under section 1094.6,

---

[5] Burlesque argues the trial court incorrectly reviewed the City's findings for substantial evidence. This argument is without merit as the trial court's order discloses that it applied the substantial evidence test to the arguments raised not by Burlesque, but by 603 concerning the factual findings of the Board.

8

subdivision (e), such actions constitute a decision.[6] Burlesque further argues that its due process rights were violated because it was not afforded a hearing prior to the revocation and confiscation of its permit.

Burlesque has not provided any evidence supporting its position. Although Burlesque alleges in its petition that its permit was revoked and confiscated, allegations in its unverified petition[7] are not evidence. (See *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 761-762 [explaining allegations in an unverified petition are not evidence]; *Sheard v. Superior Court* (1974) 40 Cal.App.3d 207, 212 ["complaint was unverified and therefore could not serve as an affidavit"].)

Further, the evidence in record does not suggest the City reached a final decision or revoked the permit. The February 4, 2020, letter from CID advised Burlesque that it *may* be operating without the appropriate permit and that doing so "*could result in ramifications which may prompt . . . revocation*[ ] or suspension of a permit." (Italics added.) "To avoid further action," the letter urged Burlesque to call CID, which would assist Burlesque in bringing its business in compliance. Thus, CID sought to work with Burlesque to avoid revoking or confiscating its permit. (See

---

[6] Section 1094.6, subdivision (e) states, "As used in this section, decision means a decision subject to review pursuant to Section 1094.5, suspending, demoting, or dismissing an officer or employee, revoking, denying an application for a permit, license, or other entitlement, imposing a civil or administrative penalty, fine, charge, or cost, or denying an application for any retirement benefit or allowance."

[7] In its reply brief, Burlesque concedes that its petition for writ of mandate was unverified.

*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 217-221 [agency's tentative decision was not final].) The record reflects that two days later, the permit was in LAPD's possession, but there is no evidence of how this occurred.[8]

The City also argues that relief pursuant to section 1094.5 is not available to Burlesque because Burlesque failed to exhaust administrative remedies. We agree.

Generally, "the failure to exhaust administrative remedies prevents [an] appellant from seeking relief through administrative mandamus." (*Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 619.) "The impact of a law or regulation on the owner's right to use or develop the property cannot be assessed until an administrative agency applies the ordinance or regulation to the property and a final administrative decision has been reached with regard to the availability of a variance or other means by which to exempt the property from the challenged restriction. A final administrative decision includes exhaustion of any available review mechanism.

---

[8] Burlesque alleged in its petition that between February 3 and 6, 2020, Detective Mauricio Moisa pressured Gasparyan to turn over Burlesque's permit to the LAPD. Further, relying on its petition as evidence, Burlesque argues that Gasparyan had no authority to present the permit to the LAPD because as of January 23, 2020, 603's owner, Kazaryan, became the chief executive officer, chief financial officer, secretary, director, and sole agent of Burlesque. As observed above, however, mere allegations are not evidence. Further, that Kazaryan would have control over Burlesque's permit raises the question of whether, under LAMC section 103.08, the permit should be deemed voluntarily surrendered due to an impermissible transfer. (See LAMC § 103.08.)

10

Utilization of available avenues of administrative relief is necessary because the court 'cannot determine whether a regulation has gone "too far" unless it knows how far the regulation goes.' " (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 12.)

Here, there is no evidence that Burlesque exhausted its administrative remedies. There is nothing in the record establishing, for instance, that Burlesque contacted CID in response to its letter, disputed the suggestion that the permit was invalid, requested a hearing, or sought and was refused a variance. (See *Muskan Food & Fuel, Inc. v. City of Fresno* (2021) 69 Cal.App.5th 372, 383 ["The petitioner has the burden of proving timely exhaustion of administrative remedies"].)

Accordingly, Burlesque has not demonstrated that the trial court erred in denying its petition for writ of administrative mandate.

## B. Burlesque Has Not Demonstrated It Is Entitled to Traditional Writ Relief Under Section 1085

Burlesque argues that if we conclude a petition for writ of administrative mandate is not the proper vehicle for it to obtain judicial relief, then we should treat its petition as one for a traditional writ of mandate under section 1085. As we describe below, we conclude Burlesque has waived this argument.

Section 1085 states, "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the

11

party is unlawfully precluded by that inferior tribunal, corporation, board, or person." (§ 1085, subd. (a).)

The petitioner must demonstrate that it "has no plain, speedy and adequate alternative remedy;[9] the respondent has a clear, present and usually ministerial duty to perform; and the petitioner has a clear, present and beneficial right to performance." (*Conlan v. Bontá* (2002) 102 Cal.App.4th 745, 752; see also § 1086.)

Burlesque contends it "has clearly alleged exactly" the elements necessary for section 1085 writ relief and directs us generally to 10 pages of the administrative record that include its 2020 business permit and CID's analysis of 603's right to a new permit. Because the page range also coincides with Burlesque's unverified petition in the clerk's transcript, perhaps Burlesque intended to cite to that record instead. In either case, Burlesque has failed to present evidence, argument, or analysis supporting its entitlement to relief under section 1085. For example, Burlesque has not demonstrated the City has a clear duty to issue Burlesque a permit renewal or a variance or that Burlesque has a clear right to such acts.

" 'As a general rule, "[t]he reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment." [Citations.] It is the duty of counsel to refer the reviewing court to the portion of the

---

**9** "Where . . . the plaintiff seeks a writ of mandate under . . . section 1085, ' " '[i]f an administrative remedy is available and has not yet been exhausted, an adequate remedy exists and the petitioner is not entitled to extraordinary relief.' [Citation.]" [Citations.]' [Citation.]" (*Monterey Coastkeeper v. Monterey County Water Resources Agency* (2017) 18 Cal.App.5th 1, 18.)

record which supports [the] appellant's contentions on appeal. [Citation.]  If no citation "is furnished on a particular point, the court may treat it as waived." [Citation.]' [Citation.]" (*Lonely Maiden Productions, LLC v. GoldenTree Asset Management, LP* (2011) 201 Cal.App.4th 368, 384.)  Also, " ' "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.]  'We are not bound to develop [the] appellants' argument for them.  [Citation.]  The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' [Citations.]" (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.)

## C.    Burlesque Has Not Established that the City Is Estopped from Invalidating Its Permit

Burlesque argues that the City should be estopped from revoking[10] Burlesque's permit under the LAMC because the City had renewed Burlesque's permit without any issue for 12 years.

" 'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and

---

[10] Burlesque states the City is estopped "from acting prejudicially against Burlesque as aforesaid on the alleged basis that the Los Angeles Municipal Code precluded Burlesque's aforesaid vested business operations at the aforesaid vested location."  From this, we deduce Burlesque means the City is estopped from revoking its permit.

13

(4) he must rely upon the conduct to his injury.' " (*City of Long Beach v. Mansell, supra*, 3 Cal.3d at p. 489.)

When the party estopped is the government, the party asserting estoppel must also demonstrate "the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach v. Mansell, supra*, 3 Cal.3d at pp. 496-497 [finding state and city were estopped from claiming an interest in public tidelands when thousands of citizens relied on the government's treatment of the tidelands as private property over a long period of time].) Put differently, "a public entity may be estopped from enforcing the law only in extraordinary cases." (*Smith v. County of Santa Barbara* (1992) 7 Cal.App.4th 770, 772.)

"It is the burden of the party asserting estoppel to prove all of its requisite elements, and the doctrine is strictly applied and must be substantiated in every particular." (*El Camino Community College Dist. v. Superior Court* (1985) 173 Cal.App.3d 606, 614.)

Burlesque's argument fails for a lack of evidence. For example, with regard to the first element, Burlesque points to no evidence that the City was apprised of the facts. Burlesque fails to provide evidence that the City knew at the time it issued the permit and renewals that Burlesque was located within 500 feet of a residential zone in violation of LAMC section 12.70C or that Burlesque lacked a certificate of occupancy allowing for adult entertainment at that location. Further, the City disputes it knew of the facts, arguing that Burlesque falsely stated adult entertainment was an approved use at its location in 2008, causing the City to approve Burlesque's initial application. Thus,

14

Burlesque has not established that the City was "apprised of the facts."

Given that Burlesque has not established this essential element, we need not address each of the remaining elements. We observe, however, that Burlesque also failed to present any argument or evidence of the fifth *Mansell* element of injustice "of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach v. Mansell, supra*, 3 Cal.3d at p. 497.) Burlesque has therefore waived such arguments. (See *Cahill v. San Diego Gas & Electric Co., supra*, 194 Cal.App.4th at p. 956.)

Thus, Burlesque has not established the City is estopped from revoking its permit.

## DISPOSITION

The judgment is affirmed. The City is to recover its costs on appeal.

NOT TO BE PUBLISHED

Mori, J.*

We concur:

CHANEY, J.                    BENDIX, Acting P. J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.